7 Cal.Rptr.3d 173 (2003)
113 Cal.App.4th 1323
In re T.S. et al., Persons Coming Under the Juvenile Court Law.
Sacramento County Department Of Health And Human Services, Plaintiff and Respondent,
v.
Shannon S. et al., Defendants and Appellants.
No. C043419.
Court of Appeal, Third District.
December 4, 2003.
*174 Ann Jory, Carmel, under appointment by the Court of Appeal, for Defendant and Appellant Shannon S.
Lori Klein, Santa Cruz, under appointment by the Court of Appeal, for Defendant and Appellant Kenneth S.
Robert A. Ryan, Jr., County Counsel and Tina Izen, Deputy County Counsel, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
SCOTLAND, P.J.
Appellants Shannon S. (mother) and Kenneth S. (father) appeal from the juvenile court's order terminating their parental rights to T.S. and K.S. (the minors). (Welf. & Inst.Code, §§ 366.26, 395; further section references are to this code.) Two claims of error are raised on appeal.
First, both appellants challenge the juvenile court's finding that the minors were adoptable. The finding was based in part upon the fact the paternal grandparents of the minors wanted to adopt them. According to appellants, this fact does not support the finding of adoptability because the grandparents were of "older" age and had not yet taken physical examinations to establish that they were fit enough to parent the minors. In appellants' view, "an actual physical to assess [the grandparents'] health [was] absolutely necessary" to "qualify them as adoptive parents"; otherwise, the grandparents' older age was a "legal impediment" to adoption.
We must confess to being a bit chagrined when we learned of the ages of these "older" grandparents  58 and 61. After all, one of us is 62, another 57, and the "new kid on our block," so to speak, is not that far behind. Until now, we have been indulging in the apparent illusion that we are still in the prime of life. Not so, according to appellants. Indeed, they suggest that a person of such advanced age is suspect as a new parent because of the physical demands of raising the children and the fact that such parents will be in their 70's when the children reach the age of 18. Paul McCartney (a recent father at 61) undoubtedly would take issue with this suggestion, as would Tony Randall (78), Rupert Murdoch (72), Luciano Pavarotti (twins at 67), Clint Eastwood (67), Larry King (66), and even California's Attorney General Bill Lockyer (61), to name just a few. Although not quite in the same age range for biological reasons, Cheryl Tiegs gave birth to twins at the age of 52; and an impressive example of those who were in their 50's and older when they adopted a child was singer Josephine Baker, who adopted 12 children between 1954 and 1959, the last when Baker was 53 years old.
We, too, take issue with appellants' position. As we will explain in the published part of this opinion, appellants have presented no empirical, scientific, or statutory basis for their assertion that, in the absence *175 of a satisfactory physical exam, a prospective adoptive parent's older age is a legal impediment to adoption. And we decline to engage in such unsupportable age-based stereotyping. Indeed, common experience informs us that there are many older grandparents, in various stages of health, who are having another go at parenthood and are capably caring for grandchildren after their own children have failed to do so. As long as the prospective adoptive parents are at least 10 years older than the child (Fam.Code, § 8601, subd. (a)), their age is not a legal impediment to adoption. Of course, a question may exist as to the "suitability" of a person to adopt a child if the person's age and physical condition, and the absence of available assistance from others, would make the person unable to adequately care for the child. (Fam.Code, § 8612, subd. (c) [adoption may be ordered only when the court is "satisfied that the interest of the child will be promoted by the adoption"].) But that is an issue "reserved for the subsequent adoption proceeding," not the section 366.26 hearing whether to terminate parental rights. (In re Scott M. (1993) 13 Cal.App.4th 839, 844, 16 Cal.Rptr.2d 766.)
In the unpublished part of this opinion, we reject mother's claim that the juvenile court erred in failing to obtain evidence of the minors' wishes about adoption. Accordingly, we shall affirm the order terminating appellants' parental rights.

FACTUAL AND PROCEDURAL BACKGROUND
In January 2000, the Department of Health and Human Services (DHHS) filed dependency petitions on behalf of 15-month-old T.S. and four-year-old K.S., alleging that father had sexually abused a sibling of the minors (§ 300, subd. (j)), and that the minors had suffered, or were at substantial risk of suffering, serious physical harm due to appellants' inability to provide regular care for them as a result of mental illness, substance abuse, and domestic violence (§ 300, subd. (b)).
The juvenile court sustained the amended petitions, adjudged the minors to be dependent children, and ordered DHHS to provide appellants with reunification services. Even though the minors had a succession of placements, first with their maternal aunt, then with two foster care families, they were doing well. DHHS recommended adoption as the appropriate permanent plan for the minors.
In March 2002, the minors were placed with their paternal grandparents and adjusted well in that placement. K.S. said she wanted to remain in their care, and T.S. told DHHS he was happy with them. The paternal grandparents indicated they were willing to adopt the minors, and DHHS referred them to a children's services agency to begin the home study process.
In April 2002, the juvenile court terminated appellants' reunification services and scheduled a section 366.26 hearing.
In August 2002, psychologist Lorin Frank reported the results of a bonding evaluation of mother and the minors. He noted that K.S. appeared to be "ambivalently attached" to mother and that T.S. saw mother as a friend and playmate. In Frank's view, both of the minors were capable of forming new attachments with adult figures. Because the minors were bonded with each other, he recommended that they remain together. Frank concluded "[t]here is nothing from this evaluation that indicates that either child would suffer psychological detriment if they were to be released for adoption."
In January 2003, the social worker reported that the paternal grandparents had finished the interview portion of their *176 home study and that the study should be completed in a month. The young minors were in good health, were happy and well behaved, were "doing very well in their placement" with the grandparents, and were maintaining contact with siblings in Yolo County and in New Mexico.
At the section 366.26 hearing in February 2003, the social worker testified that, although the paternal grandparents had not completed the physical examination portion of the home study process, there was no reason to believe they would fail the examinations. When asked what her recommendation would be if the grandparents were unable to adopt the minors, she said they should remain in the grandparents' custody.
The grandparents were 58 and 61 years of age. According to the social worker, health rather than age is the primary concern when evaluating adoptive parents. However, she acknowledged that age in combination with a medical problem might raise an issue.
Mother testified that she had regular contact with the minors, the visits had gone well, and the minors frequently told her they wanted to return to her custody. She believed that the minors were "very much bonded" to her, and she expressed uncertainty about whether the minors' sibling relationships would be maintained if they were adopted. Appellants' counsel argued that the minors were not adoptable, that the evidence supported a finding of two statutory exceptions to adoption, and that guardianship was the most appropriate permanent plan.
The juvenile court found the minors were "generally adoptable" due to their youth, good health, good behavior, and ability to do well socially. It also found they were "specifically adoptable by the paternal grandparents," who were capable of adopting them and wanted to do so. Concluding that adoption would not interfere with the maintenance of sibling relationships, the court terminated appellants' parental rights.

DISCUSSION

I
As we have noted, the juvenile court found the minors were "specifically adoptable" by their paternal grandparents, who had custody of the minors and wanted to adopt them. Appellants contend the evidence does not support this finding, noting the grandparents had not yet completed the physical examination portion of their home study.
In the words of father's appellate counsel, "there is specific reason not to assume the minors are ... adoptable based purely on their grandparents' willingness to adopt them." That reason, appellants say, was the grandparents' ages, 58 and 61. In the view of mother's appellate counsel, "[f]or these older grandparents, an actual physical to assess their health [was] absolutely necessary" to determine whether they had the capacity to parent the minors and, therefore, whether they would be approved for adoption. In fact, father argues that the absence of physical examinations for these older grandparents was a "legal impediment" to finding the minors adoptable. This is so, appellants claim, because if parental rights were terminated and the grandparents were then found physically unfit to adopt the minors, the children could be harmed "for life" by being relegated to "a series of foster care homes." We are not persuaded.
Age is a legal impediment to adoption when the prospective adoptive parent is not "at least 10 years older than the child." (Fam.Code, § 8601, subd. (a).) Appellants present no empirical, scientific, or statutory *177 basis for their assertion that, in the absence of a satisfactory physical examination, a prospective adoptive parent's older age is a legal impediment to adoption. Rather, they would have us presume that grandparents of the ages 58 and 61 are of such questionable physical condition that, before a court can consider their desire to adopt as a basis upon which to find that a dependent child is adoptable, the court must be presented with evidence that they have passed physical examinations. We decline to engage in such unsupportable age-based stereotyping. To the contrary, common experience indicates that there are many grandparents in their 50's, 60's, and 70's who have the physical ability, although perhaps not the desire, to be capable and caring parents again  instead remaining quite happy in their role as grandparents.[1] Simply stated, the older age of a prospective adoptive parent is not a legal impediment to adoption.
It is true that the age of prospective adoptive parents may be relevant to their "suitability" to adopt, depending upon their physical conditions and the availability to them of assistance in caring for the child. (Fam.Code, § 8612, subd. (c) [adoption may be ordered only when the court is "satisfied that the interest of the child will be promoted by the adoption"].) But "[g]eneral suitability to adopt is a subjective matter which does not constitute a legal impediment to adoption." (in rE scotT M., supra, 13 caL.app.4th at p. 844, 16 caL.rptr.2d 766.) Accordingly, questions about the "suitability" of a prospective adoptive family are "irrelevant to the issue whether [a minor is] likely to be adopted." (Ibid.) Such questions are "reserved for the subsequent adoption proceeding," not the section 366.26 hearing whether to terminate parental rights. (Ibid.)
Appellants argue that when a finding of adoptability depends upon the existence of a particular prospective adoptive parent, the issue of the person's suitability to adopt is appropriate for a section 366.26 hearing. And they claim the issue was appropriate in this case because there was a real question whether the paternal grandparents' ages made them unsuitable for adoption. We disagree. The juvenile court found that the grandparents were "obviously active and capable physically, having not only cared lovingly for [the minors, who had been placed in their custody], but [that] the grandmother cares for several [other] family members throughout the day for day care" and that "the grandfather has a full-time job." As the court pointed out, there was "no evidence to indicate they will not pass a home study due to any physical inabilities."
In any event, the juvenile court also based its finding of adoptability on its conclusion that the minors were "generally adoptable" because they were "in good health, young, well behaved, socially doing well ..., and happy." Substantial evidence supports this finding. Consequently, the paternal grandparents' availability was unnecessary to the finding of adoptability. This is so since the issue of adoptability "focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (In re Sarah M. (1994) 22 Cal.App.4th 1642, 1649, 28 Cal.Rptr.2d 82, orig. italics.) It is not necessary *178 that the minor already be in a potential adoptive home or that there even be a prospective adoptive parent. (Ibid.)
In sum, the juvenile court did not err in finding that the minors were likely to be adopted. (Cf. In re Sarah M., supra, 22 Cal.App.4th at p. 1651, 28 Cal.Rptr.2d 82; In re Scott M., supra, 13 Cal.App.4th at pp. 843-844, 16 Cal.Rptr.2d 766.)

II[**]

DISPOSITION
The order of the juvenile court terminating appellants' parental rights is affirmed.
We concur: MORRISON and BUTZ, JJ.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.
[1] Indeed, when former Presiding Justice Robert K. Puglia was a grandparent at the age of 69, the two older members of this panel (in our early and late 50's) joined him in successfully completing a number of triathlon competitions, including the grueling Donner Lake Triathlon. Leaving some much younger competitors in his dust, Presiding Justice Puglia provided an impressive demonstration of the physical capabilities of older grandparents.
[**] See footnote *, ante.