[No. B168749. Second Dist., Div. Eight. Apr. 26, 2004.]

RICARDO FRANZOSI, Plaintiff and Appellant, v.
SANTA MONICA COMMUNITY COLLEGE DISTRICT et al., Defendants
and Respondents.

## COUNSEL

Lawrence Rosenzweig for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Mary L. Dowell and Adrianna E. Guzman for Defendants and Respondents.

OPINION

**FLIER, J.**—Appellant Ricardo Franzosi appeals from a judgment for respondents after the trial court denied his petition for a writ of mandate seeking an order to reinstate him as a full-time professor at Santa Monica College (College).[1] The trial court ruled that Franzosi had 39 months from the effective date of his disability retirement to request reinstatement under Education Code section 87789.[2] Franzosi contends that he had 39 months from the date he was determined to be *eligible* for disability retirement, giving him an additional eight months, to request reinstatement. We agree with the trial court and affirm.

## STATEMENT OF FACTS

Franzosi started working for the District in 1980 as a part-time instructor in computer science at the College. He became a full-time instructor in 1984 and obtained tenure in 1986.

Franzosi worked full time from 1984 to spring 1995, but he did not work during the summer session in 1995. Before the fall semester in 1995, Franzosi notified the District that he would not be able to teach that term because of a medical condition. Franzosi used his accrued sick leave for that semester. In 1996, Franzosi was diagnosed with clinical depression.

Before the start of the spring 1996 semester, Franzosi notified the District that he was still unable to teach because of his medical condition. On April 1, 1996, the Board approved Franzosi for a medical leave of absence for the period February 12, 1996, to June 11, 1996, the last day of the spring semester.

On August 7, 1996, Franzosi informed the District that his medical condition prevented his returning to teach in the fall 1996 semester. On September 17, 1996, Dr. Dorothy Gelvin, the District's dean of personnel services, advised Franzosi in writing that he had two options: (1) apply for disability retirement benefits from the State Teachers' Retirement System

---

[1] Respondents are Santa Monica Community College District (District), Board of Trustees of Santa Monica Community College District (Board) and Piedad Robertson, the superintendent and president of the College.

[2] Education Code section 87789 provides, in pertinent part: "The governing board of a community college district may grant a leave of absence to any academic employee who has applied for disability allowance, not to exceed 30 days beyond final determination of the disability allowance by the State Teachers' Retirement System. If the employee is determined to be eligible for the disability allowance by the system, the leave shall be extended for the term of disability, but not more than 39 months."

All subsequent code references are to the Education Code.

(STRS) or (2) apply for an unpaid verified medical leave of absence. Gelvin forwarded application forms for both options to Franzosi and asked that he advise her of his decision.

On October 1, 1996, Franzosi submitted to the STRS an application for an "unmodified disability retirement allowance." The STRS received Franzosi's application on October 3, 1996. The STRS informed Franzosi in its acknowledgement of receipt that the STRS "will notify you and your employer of the decision regarding your application."

On January 16, 1997, Gelvin advised Franzosi that if his application for disability retirement had been approved he needed to complete the retirement process for the College. On January 22, 1997, Franzosi responded that his disability retirement application was still being processed.

Subsequently, in a letter dated May 6, 1997, the STRS notified Franzosi that his application for disability retirement benefits had been approved, effective October 1, 1996. Franzosi began receiving his disability retirement allowance retroactive to October 1, 1996. On June 1, 1997, Franzosi informed Gelvin that his disability retirement application had been approved.

On July 7, 1997, the Board approved Franzosi's retirement disability leave of absence, effective October 1, 1996. The Board's consent agenda, as discussed *post*, indicated the STRS granted Franzosi disability benefits on May 16, 1997, and that the District received confirmation from the STRS on June 13, 1997.

The STRS assigned a certified rehabilitation counselor, Robert Liebman, to assist Franzosi in returning to his former full-time employment with the District. Franzosi began participating in a STRS-approved vocational rehabilitation program on November 30, 1999.

On April 28, 2000, Liebman called Gelvin and informed her that he wished to discuss Franzosi's return to employment with the District. According to Liebman, Gelvin told Liebman that Franzosi had tenure rights. Liebman and Gelvin agreed that Liebman would get into contact with her again after Memorial Day. In a progress report to STRS dated April 30, 2000, Liebman noted that he will "[c]ontinue to provide vocational rehabilitation counseling and assist the member [Franzosi] toward reaching his expressed goal of returning to his former teaching position by January 2001."

On June 1, 2000, Liebman called Gelvin and asked to schedule a meeting to facilitate Franzosi's return to teaching at the College. On June 15, 2000, Franzosi called Gelvin about returning to work. In his progress report to

STRS of June 30, 2000, Liebman reiterated his plan of providing Franzosi counseling to reach his expressed goal of returning to his former teaching position by January 2001.

On July 12, 2000, Liebman talked with Franzosi, and they agreed Franzosi would try to schedule a meeting with the District by July 19, 2000. On July 17, 2000, Franzosi told Liebman he had been unable to reach Gelvin.

On August 7, 2000, Franzosi wrote Gelvin proposing to return to teaching on a part-time basis.

On August 21, 2000, Franzosi and Liebman discussed with Gelvin Franzosi's return on a part-time basis leading to teaching on a full-time basis, but Gelvin stated she needed to review Franzosi's tenure status with the District before making a commitment. On June 1, 2001, the District notified Franzosi's counsel that Franzosi had no right to reinstatement because he had retired from the District on October 1, 1996.

Franzosi returned to teaching on a part-time basis in the Spring 2001 semester and taught until his Spring 2003 assignment was rescinded. He continued to receive disability retirement benefits throughout this time.

## PROCEDURAL HISTORY

Franzosi filed a petition for writ of mandate on March 29, 2002, seeking reinstatement to his former full-time position pursuant to section 87789.

The trial court heard the matter on June 13, 2003, and denied Franzosi's petition on July 1, 2003. Respondents gave notice of entry of judgment on July 3, 2003, and Franzosi timely appealed from the judgment on July 11, 2003.

In denying Franzosi's petition for writ of mandate, the trial court ruled the plain language of section 87789 required Franzosi to request reinstatement within 39 months from the start of his disability. The court rejected Franzosi's contention that the period starts to run within 39 months from the date the STRS granted his disability application, May 6, 1997, stating it "would render the 'term of disability' language in section 87789 superfluous." The court found that the STRS granted Franzosi's application effective October 1, 1996, and that is when Franzosi's "term of disability" began for purposes of section 87789.

The trial court found January 1, 2000, was the expiration of 39 months from the October 1, 1996, disability effective date. The court further found

that since Franzosi admitted the first contact with the District regarding reinstatement was not made until April 28, 2000, the contact was not made within 39 months even assuming it was a proper reinstatement request. The court thus found Franzosi's request was untimely, and he had no further reemployment rights by virtue of his disability. Because Franzosi cited no authority that the District "must continue to employ him beyond 39 months, or into perpetuity," Franzosi had failed to demonstrate the District had a mandatory duty to reemploy him full time or that he had such a right to full-time reemployment.

## CONTENTIONS

Franzosi contends that under section 87789 an academic employee who has been granted a disability leave of absence must request reinstatement within only 39 months of the date he or she is determined to be *eligible* for a disability allowance by the STRS. He also contends that because he applied for reinstatement within 39 months after the STRS determined he was eligible for disability the trial court should have granted his petition for writ of mandate.

## DISCUSSION

### 1. *Standard of Review*

Code of Civil Procedure section 1085, subdivision (a), provides that a writ of mandate "may be issued by any court . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded . . . ." To be entitled to writ relief, Franzosi must show that respondents have "a clear, present and ministerial duty to reelect (rehire) [him] and that [he] has a clear, present and beneficial right to performance of that duty entitling [him] to a writ of mandate." (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54] (*Kavanaugh*).)

In a mandate proceeding, we defer to the trial court's findings of facts if supported by substantial evidence. (*Kavanaugh, supra,* 29 Cal.4th at p. 916.) Where, as here, the facts are undisputed, the trial court's interpretation of the Education Code is subject to de novo review. (*Ibid.*)

### 2. *Section 87789*

Determination of this case turns on the interpretation of section 87789, which provides that the governing board of a community college district may

grant a leave of absence to an academic employee who has applied for disability allowance, not to exceed 30 days beyond final determination of the disability allowance by the STRS. The statute further provides that "[i]f the employee is determined to be eligible for the disability allowance by the system, the leave shall be extended for the term of disability, but not more than 39 months."

Franzosi contends this paragraph creates two types of leaves. The first sentence of section 87789 allows a discretionary leave covering the period of time when the employee's application for disability is pending. The second sentence establishes a mandatory extension of leave if the employee's application is granted by the STRS. With that construction we have no quarrel.

Franzosi, however, further argues the plain language of the statute provides the 39-month leave period does not begin "until the STRS determines that the employee is eligible for a disability allowance." We disagree.

█ In interpreting a statute, we must determine the intent of the Legislature to give effect to its purpose, taking care to give the statute's words their "plain, commonsense" meaning. (*Kavanaugh, supra,* 29 Cal.4th at p. 919.) If the statute's language is not ambiguous, the plain meaning controls and it is unnecessary to resort to extrinsic sources to determine the Legislature's intent. (*Ibid.*)

Following action by the STRS, the Board approved Franzosi's disability retirement effective October 1, 1996. The effective date of disability retirement provides a clear and easily ascertainable benchmark starting the 39-month period. It also comports with the plain language of section 87789 that "leave shall be extended for the *term* of· disability . . . ." (Italics added.) "Term" is defined by Webster's Dictionary as "a limited or definite extent of time; *esp:* the time for which something lasts: DURATION, TENURE." (Merriam Webster's Collegiate Dict. (10th ed. 1995) p. 1216.) As an employee's disability retirement is effective as of a date certain (see § 24105), that date marks the beginning of the "term" of an employee's disability. In contrast, should we hold that the 39-month period commences from ·the date the employee is determined to be "eligible" for disability retirement, that would fly in the face of a plain reading of the statute. The statute does not refer to "approval of" disability benefits or "the determination of" or "confirmation of" eligibility for disability benefits, but rather speaks plainly of the "term of" disability. Commencement of disability retirement provides a date certain and establishes a uniform and readily ascertainable date from which the 39-month period should commence.

Hinging commencement of the 39-month period upon any other date raises practical difficulties. In this case, for example, Franzosi contended in the trial court that the 39-month period did not commence on October 1, 1996, but rather on any of three other dates: (1) May 6, 1997, the date he states the STRS "actually had approved" the disability benefits, (2) June 13, 1997, the date the District purportedly received confirmation that the STRS had granted Franzosi disability retirement benefits, or (3) July 7, 1997, the date the District approved Franzosi's disability retirement. Franzosi argued that the 39-month period should start at the earliest on May 6, 1997, the date he contends the STRS "actually had approved" his disability benefits. However, the dates of STRS's actions are uncertain from the record. The exhibit attached to Franzosi's declaration in the trial court indicates May 6, 1997, is merely the date of a STRS letter notifying Franzosi his application for a disability retirement benefit had been "finalized." The Board's consent agenda, which Franzosi also attached to his declaration, indicates Franzosi received a document entitled "Award of Disability Retirement Benefit" from the STRS on May 16, 1997, and the District received confirmation from the STRS on June 13, 1997. Franzosi's arguments espousing post-October 1, 1996, dates would base the 39-month period on the fortuity of the date the Board or STRS happened to take action on an employee's application or the date of the STRS's communication regarding its actions rather than the disability itself.

To interpret section 87789 as Franzosi espouses, moreover, would require that we rewrite the statute. The first sentence of section 87789 provides, "The governing board of a community college district may grant a leave of absence to any academic employee who has applied for disability allowance, not to exceed 30 days *beyond final determination of the disability allowance by the State Teachers' Retirement System*." (Italics added.) The second sentence of section 87789 reads, "If the employee is determined to be eligible for the disability allowance by the system, the leave shall be extended for the term of disability, but not more than 39 months." Franzosi would have this court rewrite the second sentence of section 87789 so that in effect it would read, "If the employee is determined to be eligible for the disability allowance by the system, the leave shall be extended for the term of disability, but not more than 39 months *beyond final determination of the disability allowance by the State Teachers' Retirement System*." The inclusion of the italicized words in the first sentence and their omission from the second sentence indicate the Legislature knew how to specify the date of approval of the disability allowance when it desires to do so and its intent that the 39-month period commence from the effective date of the disability retirement, not the date the STRS determines the employee is eligible for such retirement. We decline to modify the Legislature's clear intent.

Even if it were assumed that the language of section 87789 does not plainly require Franzosi to seek reinstatement within 39 months of the start of his disability, canons of statutory construction support a maximum 39-month reinstatement period commencing from the date of disability. "[A] statute should be interpreted ' "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' [Citation.]" (*Kavanaugh, supra,* 29 Cal.4th at p. 919.) Looking to the whole system of law related to employees in the Education Code, we find the Legislature knows how to specify the "date of the approval of the disability allowance" when it desires to designate that date.

Both petitioner and respondents agree that section 87789 contains "identical language" to section 44986, except that the latter pertains to K-12 certificated employees. Both section 87789 and former section 44986 were enacted by the Legislature at the same time.[3] (See Stats. 1977, ch. 654, §§ 1, 2, pp. 2169–2170.) As enacted, the second sentence of both statutes provided: "If the employee is determined to be eligible for the disability allowance by the system, such leave shall be extended for the term of disability, but not more than 39 months." (*Id.* at p. 2170.) The Assembly's third reading analysis of Assembly Bill No. 1230 notes that "If STRS determines the employee to be eligible [for a disability allowance], the leave of absence shall not exceed the term of disability or 39 months, whichever comes first." (Assem. Com. on Education, Off. of Research, 3d reading analysis of Assem. Bill No. 1230 (1977–1978 Reg. Sess.) as amended June 21, 1977.) If the leave of absence cannot exceed the term of disability or 39 months, *whichever comes first*, it is clear the Legislature did not intend, as Franzosi contends, for the 39-month leave period to begin only when the STRS determines the employee is *eligible* for a disability allowance since the employee by definition would already have been on a discretionary leave of absence due to disability while the STRS had his or her application under consideration. Commencing the 39-month period on the date of determination of eligibility would result in disparate treatment of employees. If date of eligibility determination is the key, employees disabled on the same date may end up with different reinstatement periods simply based on the happenstance of when their leaves are approved. The Legislature could not have intended such an anomalous result by implication in enacting section 87789.

Except for an amendment in 1990, the language of section 87789 has remained essentially unchanged since its enactment. (See Stats. 1990, ch.

---

[3] As originally enacted, former section 44986 read in pertinent part: "The governing board of a school district may grant a leave of absence to any certificated employee who has applied for disability allowance, not to exceed 30 days beyond final determination of the disability allowance by the State Teachers' Retirement System. If the employee is determined to be eligible for the disability allowance by the system, such leave shall be extended for the term of disability, but not more than 39 months." (Stats. 1977, ch. 654, § 1, p. 2170.)

1302, § 156, p. 5572.) The 1990 amendment updated some terminology and changed "*such* leave shall be extended" to "*the* leave shall be extended" (italics added) in the second sentence but otherwise left the statute unchanged. The change in language, if anything, underscores that the leave referred to in the second sentence is independent of the leave referred to in the first sentence of the statute.

Of greater significance to our analysis, the Legislature has made a number of changes to section 44986. In 1982, the Legislature amended former section 44986 to make it mandatory for the governing board of a school district to grant a leave of absence to any certificated employee who has applied for a disability allowance, not to exceed 30 days beyond final determination of the disability allowance by the STRS. The Legislature amended the second sentence of former section 44986 to expressly provide that "[i]f the employee is determined to be eligible for the disability allowance by the system, such leave shall be extended for the term of disability, but not more than 39 months *from the date of approval of the disability allowance.*" (Former § 44986, amended by Stats. 1982, ch. 1314, § 10, pp. 4862–4863, italics added.) The Legislature's amending section 44986, to state that the 39-month period begins *from the date of approval of the disability allowance*, indicates the period for requesting reinstatement in the original enactment did not extend beyond 39 months. (*People v. Mendoza* (2000) 23 Cal.4th 896, 916 [98 Cal.Rptr.2d 431, 4 P.3d 265] [Legislature's repeal of statute and enactment of new statute on same subject with significant differences in language "strongly suggests the Legislature intended to change the law"].)

At the same time that the Legislature passed the amendment commencing the 39-month period from the date of approval of the disability allowance, the Legislature also made the amendment operative only until January 1, 1989, after which it was repealed by its own terms and the prior language reinstated. (Stats. 1982, ch. 1314, §§ 10, 11, p. 4863.) Thus, as of January 1, 1989, the second sentence of section 44986 reverted again to: "If the employee is determined to be eligible for the disability allowance by the system, such leave shall be extended for the term of disability, *but not more than 39 months.*" (Added Stats. 1982, ch. 1314, § 11, p. 4863, italics added.) The section was again amended in 1993 to its present language, with the second sentence providing, "If the employee is determined to be eligible for the disability benefits by the system, *that* leave shall be extended for the term of disability, *but not more than 39 months.*" (Stats. 1993, ch. 1144, § 15, p. 6450, italics added.) Had the Legislature intended all along for the 39-month period to commence only upon approval of the disability allowance, the 1982 amendment and the 1989 reversion to the statute's prior language would have been pointless acts. (*In re Julian O.* (1994) 27 Cal.App.4th 847, 851 [32 Cal.Rptr.2d 193].)

Thus, the legislative history of sections 44986 and 87789 indicates that the Legislature knew how to specify the date of approval of the disability allowance when it desires to designate that date as commencing the 39-month period. It also indicates that the Legislature never intended the period for reinstatement in section 87789 to exceed 39 months. (*Reeves v. Workers' Comp. Appeals Bd.* (2000) 80 Cal.App.4th 22, 28–29 [95 Cal.Rptr.2d 74] [where statute does not contain words of limitation included in similar statutes, court will infer Legislature intended statute to apply more broadly]; *Craven v. Crout* (1985) 163 Cal.App.3d 779, 783 [209 Cal.Rptr. 649] ["Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent"].)

We find further indication the Legislature knows how to specify the date of approval when it intends to designate that date. In cases of willful substance abuse or where a disability retiree has mental, physical, or vocational rehabilitation potential, section 24104 explicitly provides the STRS "may limit the disability retirement to a period not to exceed two years *from the date of approval of the disability retirement.*" (Italics added.)

*Kalinowski v. Board of Education* (1979) 90 Cal.App.3d 245, 251 [153 Cal.Rptr. 178], a case interpreting former section 44986, does not aid Franzosi because the teacher on disability allowance in that case sought reinstatement and brought suit for reinstatement within 39 months of the date her temporary replacement was retained to fill her place, presumably within 39 months of the commencement of her disability. *Kalinowski* has no application to this case, where there was no effort to seek reinstatement within the 39-month period.

At oral argument, Franzosi's counsel raised a potential unfairness in holding that the 39-month period commences from the effective date of disability, as opposed to the date of approval of the disability allowance, since an employee cannot receive rehabilitation services until the STRS has approved a disability retirement allowance. That argument, however, should be addressed to the Legislature which set the policy, not the courts.

3. *Untimely Request for Reinstatement*

Franzosi's disability commenced on October 1, 1996. Franzosi admittedly did not request reinstatement within 39 months of October 1, 1996, i.e., by January 1, 2000. Because no request for reinstatement was made within the applicable period, we need not further address Franzosi's contentions that the oral and written requests for reinstatement were appropriate in form.

## DISPOSITION

The judgment is affirmed. Each party is to bear his or its own costs on appeal.

Cooper, P. J., and Boland, J., concurred.