Filed 12/11/15  In re X.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| In re X.G. et al., Persons Coming Under the Juvenile Court Law. | C079227 |
| TRINITY COUNTY HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J. G.,<br><br>        Defendant and Appellant. | (Super. Ct. Nos. 13JU0044A, 13JU0044B, 13JU0044C, 13JU0044D) |

J.G., mother of the minors, appeals from orders entered at the selection and implementation hearing terminating parental rights as to two of the minors (M.H. and X.G.) and placing the other two in long-term foster care.  (Welf. & Inst. Code,[1] §§ 366.26, 395).  Mother contends that substantial evidence does not support the juvenile court's finding that the two younger minors were likely to be adopted.  We affirm.

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

FACTS

In September 2013, the Trinity County Health and Human Services (Agency) filed a petition to remove the four minors, T.G., age 15; M.J.H., age 12; M.H., age 10; and X.G. age 5, from mother's custody due to domestic violence in the home and mother's substance abuse, which resulted in neglect and emotional damage to the minors.[2] The minors were detained and placed with a relative. The court sustained the petition in October 2013.

The disposition report recommended continued foster care and reunification services for mother. T.G. and M.J.H. had severe anger and emotional issues. Both M.H. and X.G. needed therapy. X.G. had behavioral issues due to witnessing violence; however, the foster parent reported that X.G.'s anger had largely subsided. The court adopted the Agency's recommendation.

By March 2014, the Agency sought to temporarily terminate visits because they were having a negative effect on the minors. T.G. and M.J.H. were placed in group homes while M.H. and X.G. remained in the original foster home. The court decreased visits to twice a month.

The report for the six-month review hearing stated M.H. was doing well in school, continuing therapy and stabilizing mentally and emotionally. X.G. had transitioned from special education classes to regular classes and was doing better with continued therapy. At the six-month review hearing the court continued services for mother and ordered visits to remain conjoint with the minors' therapists.

The 12-month review report recommended continued placement and termination of mother's services. T.G. had run away and his whereabouts were unknown; M.J.H. remained in a group home and, although he was showing stress behavior, he was being

---

[2] The issue in the appeal does not involve the two older minors. Facts relating to them appear incidentally only as they impact the two younger minors.

considered for transition to the foster home with his siblings; and the two youngest minors remained in the same foster home. M.H. continued to do well in school and did not want to talk about her therapy or her mother. X.G.'s behavior in school had improved, he enjoyed joint therapy with mother and his general behavior was much better. At the review hearing, the court adopted the recommendation to terminate mother's services and set a section 366.26 hearing.

The March 2015 report by the Agency for the section 366.26 hearing stated that M.J.H. was placed in the siblings' foster home in November 2014, having done well in the group home. However, within months, M.J.H. engaged in extreme sexualized behavior and was returned to the group home. About the same time X.G. also displayed sexualized behavior and was moved to a new foster home. X.G. showed some defiance after the move but reportedly had settled down. X.G. had continued visits with mother, which had progressed from therapeutic to direct supervision and there were no reported concerns regarding the visits. M.H. remained in her foster home. M.H. liked the home and felt relieved to have a regular life. M.H. did not want to have contact with mother and had declined further visitation. The Agency recommended adoption as a permanent plan for X.G. and M.H. and long-term foster care for the older minors.

The adoption assessment from the California Department of Social Services (Department) recommended a permanent plan of adoption for both X.G. and M.H. The Department assessed M.H. as a healthy, active 11-year-old child. Although M.H. was behind in some subjects in school the potential adoptive parents were setting up tutoring. M.H. was continuing in therapy but tended not to talk about it. The current foster family was interested in adoption, but it was not clear to the Department that the current home was the best match for M.H. The Department assessed that, if necessary, a transition to another home could happen with minimal disruption to M.H. The Department concluded M.H. was an adoptable child and it was likely she would be adopted if parental rights were terminated.

The Department assessed X.G. as a healthy active six-year-old child. X.G. was in the first grade and had difficulty with reading and spelling. X.G. was in therapy and adjusting well to the new placement, which was not an adoptive placement. X.G. was described as acting like a typical six-year-old and there was no current observation of the sexualized behavior which resulted in removal from his prior placement. The Department assessed him as adoptable and was "confident that an adoptive home c[ould] be located which will meet [X.G's] needs in a therapeutic manner."

At the section 366.26 hearing in March 2015, mother argued that the minors, X.G. and M.H., were not currently adoptable and that any such finding was premature. Minor's counsel argued M.H. was in a stable placement where the foster parents had expressed an interest in adoption and M.H. wanted to be adopted there. The court found, by clear and convincing evidence that both minors were likely to be adopted and terminated parental rights.

## DISCUSSION

Mother argues substantial evidence does not support the juvenile court's finding that X.G. and M.H. were adoptable. Mother points out that M.H. was an older child and the Department had identified M.H.'s placement as only a possible, not a prospective, adoptive home, having not decided whether the placement was the right match for M.H. Mother also argues that X.G.'s age and his mental health issues coupled with no identified adoptive placement made it unlikely that X.G.'s adoption would occur in a reasonable time.

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence--that is, evidence which is reasonable, credible and of solid value--to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be

4

resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted." (§ 366.26, subd. (c)(1).)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child. (*In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649.) The existence or suitability of the prospective adoptive family, if any, is not relevant to this issue. (*Ibid*.; *In re Scott M*. (1993) 13 Cal.App.4th 839, 844.) "[T]here must be convincing evidence of the likelihood that adoption will take place within a reasonable time." (*In re Brian P*. (2002) 99 Cal.App.4th 616, 624.) The fact that a prospective adoptive family is willing to adopt the minor is evidence that the minor is likely to be adopted by that family or some other family in a reasonable time. (*In re Lukas B*. (2000) 79 Cal.App.4th 1145, 1154.)

Here, M.H. was healthy, emotionally and behaviorally stable and there was at least one family willing to adopt her despite her age. Whether this family was ultimately approved by the Department, their willingness to adopt coupled with M.H.'s positive characteristics constituted substantial evidence that the child was likely to be adopted in a reasonable time.

X.G. had entered foster care with challenging behavioral issues related to witnessing violence. The stability of the foster placement decreased his anger issues,

5

although visits with mother exacerbated his emotional issues. The minor participated in therapy to deal with the anger and aggression related to the abuse and neglect he had suffered and made significant progress during the reunification period. Although it is unclear from the record why he began showing sexualized behavior, it can be inferred that the stress of having M.J.H. placed in the foster home and acting out in that fashion had a negative influence on X.G. After moving to a new placement, X.G. adapted quickly and did not display any of the problematic sexualized behaviors which led to loss of his earlier placement. At six years old, X.G. was still relatively young. He was in good health and his behavior had largely stabilized. The need for ongoing therapy and support from a prospective adoptive placement as he continued to work through his issues was not so unusual a circumstance that it would preclude adoption. Substantial evidence supports the juvenile court's conclusion X.G. was likely to be adopted in a reasonable time.

DISPOSITION

The orders of the juvenile court are affirmed.

/s/_____<br>Robie, J.

We concur:

/s/_____
Raye, P. J.

/s/_____
Renner, J.

6