13 Cal.App.4th 839 (1993)
16 Cal. Rptr.2d 766
In re SCOTT M. et al., Persons Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF SOCIAL WELFARE, Plaintiff and Respondent,
v.
VIRGINIA D., Defendant and Appellant.
Docket No. C012797.
Court of Appeals of California, Third District.
February 19, 1993.
*840 COUNSEL
Mark E. Cutler and John C. Lyman, under appointments by the Court of Appeal, for Defendant and Appellant.
L.B. Elam, County Counsel, and Loni Montgomery, Deputy County Counsel, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
SCOTLAND, J.
Virginia D. (appellant), the mother of minors Scott M. and Dawn M., appeals from juvenile court orders terminating her parental rights (Welf. & Inst. Code, § 366.26; further section references are to the Welfare and Institutions Code).
In the published portion of this opinion, we reject appellant's contention that the juvenile court erred when it prevented her "from examining the suitability of the prospective adoptive parents" during cross-examination of a social worker who opined the minors were adoptable. As we shall explain, if appellant had attempted to inquire into whether there was some legal impediment to adoption by the prospective adoptive parents, such evidence *841 would have been relevant because the social worker's opinion that the minors will be adopted was based in part on the foster parents' desire to adopt them. However, appellant's cross-examination of the social worker did not focus on a legal impediment to adoption by that family. Instead, appellant sought to inquire whether the foster parents were "suitable" for the minors. General suitability to adopt is a subjective matter which does not constitute a legal impediment to adoption and, thus, is irrelevant to the issue of whether the minors are likely to be adopted. Therefore, the juvenile court properly ruled that a section 366.26 hearing on termination of parental rights does not provide a forum for the minors' parent to contest the "suitability" of prospective adoptive parents.
In the unpublished part of this opinion, we reject appellant's contentions that the juvenile court incorrectly relied on an outdated adoption assessment report, thereby wrongly concluding the minors will be adopted, and failed to exercise its authority to determine sibling visitation. Accordingly, we shall affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND
Scott M. (one and one-half years of age), Dawn M. (three and one-half years old) and Gary M., Jr. (twelve years of age)[1] were living with appellant in a motel when sheriff's officers were summoned to investigate possible child neglect. The motel was filthy, had no food and smelled of urine. Scott and Dawn were dirty and suffered from abrasions and head lice. Appellant "appeared to be gravely disabled and unable to care for the children." Appellant admitted substance abuse; she also suffered from Huntington's chorea.
Dependent child petitions were filed, alleging the minors came within the provisions of section 300, subdivisions (a) and (b), because appellant had emotional and psychiatric problems rendering her incapable of providing adequate care and control for the minors, and appellant and the minors' father, Gary M., had failed to provide the minors with a home.
After a contested jurisdiction hearing, the juvenile court found the allegations were true. The court adjudged Scott and Dawn to be dependent children of the court, placed them in a foster home, and ordered reunification services.
Due to appellant's condition, she was unable to reunify with Scott and Dawn. According to the psychologist who evaluated her, appellant has been *842 suffering for 10 years from Huntington's chorea, a progressively deteriorating neurological disease affecting the mind and body. The condition renders appellant unable to care for the minors.
After a contested 12-month review and permanency planning hearing (Code, § 366.21), a permanent plan of adoption was ordered for Scott and Dawn, and a section 366.26 hearing was scheduled.
An adoption assessment report dated May 2, 1991, was prepared by the social worker for the section 366.26 hearing originally scheduled for May 6, 1991. The report noted that Scott and Dawn had progressed in their development in the foster home. Problems had arisen, including Scott's self-destructive and paranoid behavior, and Dawn's depression and inappropriate interaction with other children. However, the minors were receiving therapy and exhibited many "positive behaviors and personality traits." The minors' foster parents since June 1990 wanted to adopt Scott and Dawn. The social worker knew of no obstacles to completion of adoption. The prospective adoptive parents had been married for twenty-two years and had nine children, seven of whom resided in the home. Two of the seven children still in the home were special needs children, and three had been adopted. The family was active in church and participated in many family hobbies and activities, as well as individual activities for the children. The foster father worked for the Department of Corrections; the foster mother did not work outside the home. They were licensed as a foster home and had no criminal record. The report concluded it is "likely by clear and convincing evidence that the minors will be adopted."
In an addendum dated May 3, 1991, the social worker noted the foster parents took good care of Scott and Dawn and were committed to their emotional and physical well-being. The foster parents were supportive in the adoption process and cooperative with staff. The home study was scheduled for completion by the end of the summer 1991. The minors' negative behaviors greatly decreased in three months. Another addendum, dated June 21, 1991, updated the court on appellant's continued inability to care for Scott and Dawn.
The section 366.26 hearing did not occur until December 2, 1991. The court took judicial notice of the social worker's reports. During appellant's cross-examination of the social worker, the juvenile court sustained relevancy objections to questions concerning the ability of the foster parents (the prospective adoptive parents) to care for the minors, the amount of time the foster mother was out of the home taking college courses, whether the foster mother had assistance caring for the minors, and whether the foster parents *843 would receive special funding to adopt the minors because of their special needs. Appellant's counsel claimed these questions were relevant to "whether or not these two children are adoptable because of their age and the problems that are associated with them...." The juvenile court disagreed, stating that while the issue of adoptability was before the court the hearing did not focus specifically on the foster parents as prospective adoptive parents. Rather, the hearing focused on the minors, i.e., whether they are adoptable without regard to any specific family.
In this regard, the social worker opined that Scott and Dawn are adoptable whether or not the particular foster parents were interested in adopting them. According to the social worker, the children were adoptable because of "their young age" and the fact that "[t]here's a lot of adoptive parents who are waiting for children[,] who do want special needs children and who are willing to work with them." The social worker further testified that the minors' emotional problems did not require a residential treatment type facility. The minors were receiving counseling and their emotional instability and acting out did not render them unadoptable.
The juvenile court found "by clear and convincing evidence that it is likely that the minors will be adopted by the current foster parents, ..." The court further stated, "that is my future goal of adoption for the minors if there are no obstacles for that adoption." Thereafter, the court found: "It is likely by clear and convincing evidence that the minors will be adopted and that termination of parental rights would not be detrimental to the minors."

DISCUSSION

I
Appellant introduces her first claim of error as follows: "In contesting the termination of her parental rights, appellant does not necessarily seek to regain custody of Scott and Dawn. All parties agree Huntington's Chorea has rendered appellant unable to provide for her children's care. But their adoptability has not been demonstrated by clear and convincing evidence when all relevant evidence is considered.... Appellant seeks to preserve what is left of her family through initiation of guardianship proceedings. She was improperly denied the opportunity to present relevant evidence in this regard. The matter must therefore be remanded for a new section 366.26 hearing  to be based this time upon a current assessment and to allow presentation of all evidence relevant to what is in Dawn['s] and Scott's best interests."
(1) In asserting she was denied the opportunity to present relevant evidence, appellant contends she was "improperly prevented from examining *844 the suitability of the prospective adoptive parents." Noting that the adoption assessment focused on the foster parents as the likely adoptive parents in opining the minors will be adopted, appellant argues she "was not allowed to test the information therein provided by examination of [the social worker who prepared the assessment reports]."
We agree with the juvenile court that a section 366.26 hearing does not provide a forum for the minors' parent to contest the "suitability" of a prospective adoptive family. Rather, what is required is clear and convincing evidence of the likelihood that the children will be adopted within a reasonable time either by the prospective adoptive family or some other family. (In re Jennilee T. (1992) 3 Cal. App.4th 212, 223 [4 Cal. Rptr.2d 101]; In re Amelia S. (1991) 229 Cal. App.3d 1060, 1065 [280 Cal. Rptr. 503].) If appellant had sought to introduce evidence of some legal impediment to adoption by the prospective adoptive parents, such evidence would have been relevant because the social worker's opinion that the minors will be adopted was based in part on the existence of the prospective adoptive family which was willing to adopt the minors. However, appellant's cross-examination of the social worker did not focus on a legal impediment to adoption by that family. Instead, appellant sought to inquire whether the foster parents were "suitable" for the children, e.g., whether the prospective adoptive mother would be out of the home for extended periods of time taking college classes, whether some other adult would be available to care for the children, whether the prospective adoptive family would receive financial assistance to care for the children, and whether the family had the ability to care for the minors.
As the court properly ruled, questions concerning the "suitability" of a prospective adoptive family are irrelevant to the issue whether the minors are likely to be adopted. General suitability to adopt is a subjective matter which does not constitute a legal impediment to adoption. If inquiry into the suitability of prospective adoptive parents were permitted in section 366.26 hearings, we envision that many hearings would degenerate into subjective attacks on all prospective adoptive families in efforts to avoid termination of parental rights. Such a result is not envisioned by the statutory scheme. Rather, the question of a family's suitability to adopt is an issue which is reserved for the subsequent adoption proceeding.
Because appellant's questions were not directed to any legal impediment which would preclude the foster parents from adopting the minors, the juvenile court correctly foreclosed appellant's inquiry into the "suitability" and "appropriateness" of said family for adoption.

*845 II, III[*]
.... .... .... .... .... .... .... .

DISPOSITION
The judgment is affirmed.
Puglia, P.J., and Sims, J., concurred.
Appellant's petition for review by the Supreme Court was denied April 29, 1993.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.
[1] Appellant does not contest the juvenile court's orders relating to Gary M., Jr., who was ordered into a permanent plan of guardianship. Accordingly, we make no further reference to him.
[*] See footnote, ante, page 839.