Filed 3/5/13  In re B.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re B.C., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
| Plaintiff and Respondent, | C071627 |
| v. | (Super. Ct. No. JD230196) |
| C.H., | |
| Defendant and Appellant. | |

C.H., mother of the minor, appeals from an order of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends the juvenile court abused its discretion in granting the Sacramento County Department of Health and Human Services' (Department) petition for modification seeking placement of the minor in her prospective adoptive relative's home.  She also contends the evidence does not support the juvenile court's finding the minor is generally adoptable.  As to the first

---

[1] Undesignated section references are to the Welfare and Institutions Code.

1

contention, mother does not have standing to raise this contention on appeal. On the second contention, we conclude there is substantial evidence in the record to support the juvenile court's finding that the minor is generally adoptable. Accordingly, we affirm the orders of the juvenile court.

BACKGROUND

On September 28, 2009, the Department filed a section 300 petition on behalf of the then five-year-old minor based on mother's failure to protect the minor due to her mental health issues. The minor was detained. The Department's subsequent investigation revealed the minor may have been subjected to past sexual abuse. The juvenile court sustained the petition and, at a March 12, 2010, dispositional hearing, adjudged the minor a dependent and ordered reunification services for mother.

In June 2010, the minor was noted to be doing well in her foster home and making progress in treatment with her therapist. She was identifying emotions and expressing them, and opening up about past trauma and anxiety. The minor's foster family, however, was not willing to provide permanency for the minor if mother failed to reunify. After three months, the minor had to be moved to a higher level of care because of behavioral problems. The minor refused to follow house rules, had tantrums when she did not get her way, and displayed sexualized behavior during bath time.

The minor was moved to a new foster home on September 9, 2010. In its 12-month review report, the Department reported the minor was adjusting to the structure and routine of her new foster home.

In October 2010, the Department filed a petition for modification, requesting a referral under the Interstate Compact on the Placement of Children (ICPC) for a relative in Oregon who was willing to provide permanency.

Mother failed to reunify and, on January 25, 2011, reunification services were terminated. In its May 2011 report prepared for the selection and implementation hearing, the Department noted the minor's behavior issues had subsided in her new

2

placement. Over the Christmas holiday, the minor visited her previous foster parents and had quickly fallen back into problematic behaviors. The social worker concluded it was apparent the minor benefited from a highly structured environment with clear expectations and consequences. An approved homestudy had been completed for the minor's relative in Oregon and visits between the relative and minor were being initiated.

The Department filed an addendum report on September 22, 2011. A new ICPC referral for the relative in Oregon had been requested. The minor's current caregiver was willing to provide permanency in the form of guardianship, but not adoption. The social worker opined that, while the minor was "hard to place due to behavioral issues, it is likely that she can be placed for adoption." In fact, she was in receipt of three homestudies of families interested in adopting the minor.

The Department filed a final addendum just prior to the May 21, 2012, selection and implementation hearing. The new ICPC referral for the relative in Oregon had been approved and the Department had filed a section 388 petition for modification seeking placement of the minor in her prospective adoptive relative's home in Oregon. At this hearing, the social worker opined the minor was likely to be adopted.

The juvenile court granted the Department's petition for modification seeking placement of the minor with her prospective adoptive relative in Oregon. The juvenile court then found the minor "generally adoptable" and likely to be adopted by clear and convincing evidence, and terminated parental rights.

DISCUSSION

I

*Placement of Minor*

Mother contends the juvenile court abused its discretion in granting the Department's petition for modification seeking placement of the minor in her prospective adoptive relative's home in Oregon. Mother, however, does not have standing to raise this contention on appeal.

3

Only a person aggrieved by a dependency order may appeal it. (Code Civ. Proc., § 902; *In re Carissa G.* (1999) 76 Cal.App.4th 731, 734.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236.) "'[T]he mere fact a parent takes a position on a matter at issue in a juvenile dependency case that affects his or her child does not alone constitute a sufficient reason to establish standing to challenge an adverse ruling on it.'" (*Id.* at p. 239.)

Once reunification services are terminated, as they were here, a parent's interest in the care, custody, and companionship of the child is no longer paramount. Instead, the focus shifts to the needs of the child for permanency and stability. (*In re K.C.*, *supra*, 52 Cal.4th at p. 236.) The issue of appropriate placement of the minor is not before the court at a section 366.26 hearing. The issues before the juvenile court at a section 366.26 hearing are: (1) whether the minor is adoptable; and (2) whether any exceptions to adoption apply. (§ 366.26; *In re Christopher M.* (2003) 113 Cal.App.4th 155, 160.) Thus, "[a] parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*In re K.C.*, *supra*, 52 Cal.4th at p. 238.)

Mother complains about the suitability of the relative with whom the minor was placed, but she does not identify how the relative placement order impacted the juvenile court's termination order. She does not articulate how *her* interests would be advanced by a reversal of the placement order. For example, she does not assert that she would have retained her parental rights if the minor had remained in foster care.

At the section 366.26 hearing, mother's counsel entered a general objection to a finding of adoptability, without any specification as to why the minor was not adoptable. The minor was found to be generally adoptable. This finding is unaffected by the

4

placement of the minor. Thus, because the relative placement order did not affect the juvenile court's termination order, mother does not have standing to raise the juvenile court's order granting the Department's request for relative placement on appeal.

## II

### *Adoptability*

Mother contends the evidence does not support the juvenile court's finding the minor is generally adoptable. We disagree.

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child shall not constitute a basis for the court to conclude that it is not likely the child will be adopted." (§ 366.26, subd. (c)(1).)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) The existence or suitability of the prospective adoptive family, if any, is not relevant to this issue. (*Ibid.*; *In re Scott M.* (1993) 13 Cal.App.4th 839, 844.) "[T]here must be convincing evidence of the likelihood that adoption will take place within a reasonable time." (*In re Brian P.* (2002) 99 Cal.App.4th 616, 624.) The fact that a prospective adoptive family is willing to adopt the minor is evidence the minor is likely to be adopted by that family or some other family in a reasonable time. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154.)

When the sufficiency of the evidence to support a finding is challenged on appeal, even where the standard of proof in the juvenile court is clear and convincing evidence, we must determine if there is any substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924.) In making this determination, we resolve

5

all conflicts in favor of the prevailing party. Issues of fact and credibility are questions for the trier of fact, and we do not reweigh the evidence when assessing its sufficiency. (*In re S.C.* (2006) 138 Cal.App.4th 396, 415.)

The Department's May 23, 2011, report stated the minor had no physical health concerns, was on track developmentally, and was performing above average in school with no behavioral problems. She had been referred for mental health services and had successfully graduated from the program. Although the minor had demonstrated behavior problems in the past, her emotional development and adjustment to her September 2010 placement was positive, and she was benefiting from a highly structured environment with clear expectations and consequences. By September 26, 2011, the social worker had three homestudies of families interested in adopting the minor. In the September 26, 2011, addendum report, the social worker opined that the minor was hard to place due to behavioral issues but was likely to be able to be placed for adoption. At the May 21, 2012, hearing, the social worker concluded the minor was likely to be adopted. The evidence supports this conclusion.

Although the minor may better thrive in a structured environment with clear expectations and consequences, her needs were not so demanding as to necessitate specialized placement, nor was her behavior, even before it resolved, so severe as to pose an obstacle to adoption. On this record, the juvenile court reasonably could find, as it did, that the minor is generally adoptable and likely to be adopted within a reasonable time.

Because we find substantial evidence supports the juvenile court's finding the minor is likely to be adopted, i.e., is generally adoptable, we do not reach mother's final contention that the minor is only specifically adoptable and the prospective adoptive relative is not a suitable caretaker. It is only if the characteristics of the child make it so difficult to find a family willing to adopt the child that the child is likely to be adopted only if the prospective adoptive parents are willing to do so that any inquiry into the

existence of a legal impediment to adoption by the prospective adoptive parents may be relevant at the section 366.26 hearing. (*In re Sarah M., supra,* 22 Cal.App.4th at p. 1650; Fam. Code, § 8600 et seq.) As the juvenile court concluded, the minor does not have such characteristics in this case.

## DISPOSITION

The orders of the juvenile court are affirmed.


      HOCH      , J.


We concur:


      BUTZ      , Acting P. J.


      MURRAY      , J.