Filed 9/26/14  In re D.B. CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

<table>
<tr><td>In re D.B., a Person Coming Under the Juvenile Court Law.</td><td></td></tr>
<tr><td>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>       Plaintiff and Respondent,<br><br>          v.<br><br>JOHN B. et al.,<br><br>       Defendants and Appellants.</td><td>F069047<br><br>(Sup. Ct. No. JP000454)<br><br><br>**O P I N I O N**</td></tr>
</table>

### THE COURT[*]

APPEAL from orders of the Superior Court of Merced County.  John D. Kirihara, Judge.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant, John B.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant, Michelle B.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Kane, J., and Chittick, J.[†]

[†]     Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

John B. (father) and Michelle B. (mother) appeal from a March 11, 2014, order terminating their parental rights (Welf. & Inst. Code, § 366.26)[1] to their eight-year-old daughter, D.B. After reviewing the entire record, father and mother's court-appointed counsel informed this court they could find no arguable issues to raise on father and mother's behalf. Counsel requested, and this court granted, leave for father and mother to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).)

Father and mother have submitted letters in which they list 12 "arguable issues." Of those, only the following pertain to the termination proceedings: (1) the social worker lied when she testified father had a confrontation with a sheriff during a visit; (2) minor's counsel and county counsel mischaracterized the frequency of mother's visits with D.B.'s half-siblings; and (3) the juvenile court erred in relieving the guardians ad litem at the conclusion of the hearing. The remaining issues pertain to the suitability of D.B.'s prospective adoptive parents, the failure of the Merced County Human Services Agency (agency) or counsel to obtain their medical records, and the failure of police to read them their *Miranda*[2] rights. Father and mother also contend two of the social workers involved in their case have been admitted to a psychiatric facility and they question the social workers' mental stability.

As discussed below, we will dismiss the appeal as father and mother have failed to make a good cause showing that any arguable issue of reversible error arose from the termination hearing. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.)

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

**PROCEDURAL AND FACTUAL SUMMARY**

Father and mother suffer from a delusional disorder (persecutory type) and share the delusion that Merced County and Atwater police officers raped them multiple times. In September 2011, the agency removed their then five-year-old daughter, D.B., and mother's six-year-old twins because father and mother were mentally unstable, the home was in poor condition, and the children appeared to be developmentally delayed.

The juvenile court exercised its dependency jurisdiction over the children and ordered father and mother to undergo two psychological evaluations. The psychologists differed as to whether father and mother could benefit from reunification services.

The juvenile court ordered father and mother to complete a parenting program, a medication evaluation, and a mental health assessment. The court also ordered reunification services for William, the father of the twins.

As a result of their mental health assessment, father and mother were both diagnosed with a delusional order (persecutory type) and possibly a shared delusional disorder. According to mother's therapist, her delusional disorder placed the children at risk of harm. Father's therapist believed he could parent the children because his delusion involved a fixed belief about a specific event—the assault and rape—he held to be true.

After 12 months of services, father and mother had not, according to the agency, improved their mental health such that the children could be safely returned to their custody. Father's persecutory beliefs regarding law enforcement persisted and he and mother set poor boundaries with the children and praised the children for odd behavior. The agency recommended that the juvenile court terminate their reunification services at the 12-month review hearing.

The juvenile court conducted the 12-month review hearing in September 2013. By that time, D.B. had been placed with the twins in the home of William and his wife

3

and the juvenile court had appointed father and mother each a guardian ad litem. The juvenile court terminated father and mother's reunification services as to D.B. and set a section 366.26 hearing. The court dismissed its dependency jurisdiction over the twins and granted William custody of them. Father and mother filed writ petitions from the juvenile court's setting order, which we denied (F068102).

In March 2014, the juvenile court conducted a contested section 366.26 hearing on the agency's recommendation to terminate father and mother's parental rights and select adoption as D.B.'s permanent plan. According to the agency, William and his wife loved D.B. and wanted to provide her a home with the twins.

The juvenile court heard testimony from father, mother, mother's guardian ad litem, and social worker Robin Silveira. Silveira testified about her observations of D.B.'s visitation with father and mother and her attachment to them and to William. Silveira said D.B. was happy to see her parents and was affectionate with them but easily separated from them. Silveira described D.B.'s attachment to them as "disorganized" and "insecure." In contrast, Silveira testified that D.B. had a "good, strong, [and] secure attachment" to William. D.B. referred to father and mother and William and his wife as "mommy" and "daddy."

The juvenile court found D.B. was likely to be adopted and terminated father and mother's parental rights. In doing so, the court found that continuing father and mother's relationship with D.B. was "marginally beneficial" with a "potential for major detriment." At the conclusion of the hearing, the juvenile court relieved counsel for father and mother as well as the guardians ad litem.

This appeal ensued.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is appellant's responsibility to raise claims of

4

reversible error or other defect and present argument and authority on each point made. If an appellant does not do so, the appeal should be dismissed. (*In re Sade C*. (1996) 13 Cal.4th 952, 994.)

Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability. (*In re Marilyn H*. (1993) 5 Cal.4th 295, 309.) Thus, at the permanency planning stage, the statutory presumption is that an adoptable child's interests are best served by terminating parental rights. (§ 366.26, subd. (c)(1).) Indeed, the court must terminate parental rights and order the child placed for adoption unless the court finds that termination would be detrimental to the child. (§ 366.26, subd. (c)(1)(B).)

In this case, the juvenile court considered but rejected the exception to adoption which arises when severing the child's contact with the parent would be detrimental. This exception often referred to as the "beneficial relationship" exception is set forth in section 366.26, subdivision (c)(1)(B)(i) and requires the parent to show that he or she maintained regular visitation and contact with the child, and the child would benefit from continuing the relationship.

Father and mother do not challenge the juvenile court's finding that the "beneficial relationship" exception does not apply. Instead, they raise a host of issues, none of which are germane to the juvenile court's determination that D.B. was adoptable and its decision to terminate their parental rights as we now explain.

The juvenile court is the trier of fact in dependency proceedings and it alone determines the relevancy and weight of the evidence and the credibility of witnesses. (§ 366.26, subd. (c)(1); *In re Casey D*. (1999) 70 Cal.App.4th 38, 52-53.) Thus, whether the social worker lied in her testimony and whether counsel mischaracterized evidence are matters for the juvenile court.

5

Further, father and mother did not challenge the suitability of William and his wife as D.B.'s prospective adoptive parents at the hearing.  Even if they had, the suitability of prospective adoptive parents is not relevant to the issue whether a child is likely to be adopted.  Rather, the question of a family's suitability to adopt is an issue which is reserved for the subsequent adoption proceeding.  (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844.)

With respect to the juvenile court's decision to relieve the guardians ad litem, father and mother have not cited any authority to support their contention that the court's decision was error.  Nor have they established that their medical records were relevant and that either the agency and/or their attorneys were remiss in not admitting them into evidence.  As for their assertion the police did not "Mirandize" them, that would be an issue in a criminal proceeding not a dependency proceeding.  Finally, their belief that two of the social workers received psychiatric treatment is not evidence and was never raised before the juvenile court.

As we stated above, the juvenile court had to decide whether D.B. was adoptable and whether it should terminate father and mother's parental rights.  As we explained, father and mother failed to make a good cause showing of any arguable issue of reversible error related to the issues before the juvenile court at the termination hearing.  (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.)  Consequently, we will dismiss the appeal.

## DISPOSITION

This appeal is dismissed.