Filed 9/16/16  In re J.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.B. et al., Persons Coming Under the Juvenile Court of Law. | |
| SAN DIEGO COUNTY HEALTH & HUMAN SERVICES AGENCY, | D069773 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ2922 A-B) |
| v. | |
| E.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Lisa Maldonado, Senior Deputy County Counsel, for Plaintiff and Respondent.

E.B. appeals the juvenile court's order terminating his parental rights and selecting adoption of his two daughters, J.B. and A.B., as the appropriate permanent plan. (Welf. & Inst. Code,[1] § 366.26.) E.B. makes no argument based on the parental benefit exception of section 366.26, subdivision (c)(1)(B)(i); rather, he contends: (1) insufficient evidence supports the trial court's order; (2) the girls were not generally adoptable; and (3) if J.B. is not adoptable, then A.B. also is not adoptable based on the sibling relationship exception. We conclude substantial evidence supports the court's finding the children were eligible for adoption and the sibling bond exception does not apply; therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, J.B. was involved in a car accident that left her a paraplegic. She uses a wheel chair, has limited mobility of her arms, an inability to smell, eczema, and loss of vision in her left eye. She has one functioning lung, suffers from asthma, and uses an oxygen mask while sleeping. In January 2008, she came to the attention of the San Diego Health and Human Services Agency (the Agency) due to medical neglect by her mother. Three months later, when J.B. was six years old and A.B. was four years old, they were taken into protective custody because their mother had been physically disciplining them.

At that time, E.B. was incarcerated, and he remains in prison serving a 25-year-to-life sentence for rape by force or violence, lewd and lascivious acts with a child, rape in

---

[1]     Statutory references are to the Welfare and Institutions Code.

concert with another person, and possession of a firearm. His prospective release date is in 2025.

The Agency conducted a home study and approved T.T. as the girls' caregiver. The girls have lived with her from December 2008 until the present. T.T. takes care of J.B.'s extensive medical needs, including repositioning J.B. every four hours at night to avoid J.B. getting bedsores. For a period of time, T.T. also changed J.B.'s colostomy bag, emptying her catheter every three to four hours; but now the catheter is not required to be changed overnight. During J.B.'s "sick season," spanning approximately August to December, J.B. must be turned every two hours due to excess fluid in her lung. T.T. sleeps on the floor in J.B.'s bedroom to carry out that task. In February 2011, the juvenile court granted T.T. legal guardianship of the girls, and terminated its jurisdiction.

In June 2015, the Agency filed a section 388 petition to modify the siblings' permanent plan from legal guardianship to adoption. The children were subsequently declared dependents of the juvenile court, which held a section 366.26 hearing in January 2016. The social worker wrote a report, which the court admitted into evidence and read. The social worker analyzed the likelihood of adoption and concluded: "[J.B.] is an adoptable girl who is friendly, outgoing, and creative. As of [September 28, 2015], there is one family in San Diego County with approved adoptive home studies who are [*sic*] willing to adopt a child matching [J.B.'s] characteristics, including her age, ethnicity, and medical needs. [¶] [A.B.] is an adoptable girl who is intelligent, energetic, and sweet. As of [September 28, 2015], there are [two] families in San Diego County with approved adoptive home studies who are willing to adopt a child matching [A.B.'s] characteristics.

3

There is one family in San Diego County approved to adopt a sibling set matching [J.B. and A.B.'s] characteristics."  The social worker expressed confidence that if in the future it became necessary to find a new adoptive family for the girls, the Agency could perform child specific recruitment to find a family, relying on its long and successful history of making such placements.

In evaluating the fitness of T.T. and her husband to be adoptive parents, the social worker stated:  "[T.T.] was formerly [J.B.'s] nursing assistant at Polinsky Children's Center.  She has cared for [J.B. and A.B.] since 2008 and took legal guardianship in 2011.  She has been the primary caregiver and parent figure for [J.B. and A.B.] for the past [seven] years.  The caregiver married in 2013.  Her husband is a supportive and an affectionate father figure, whom [J.B. and A.B.] call 'dad.'  He helps care for the girls daily and has a loving, committed relationship with them."

In the fall of 2015, the social worker twice met with T.T. and her husband to explain the adoption process, and she concluded they were aware of and understood the responsibilities of adoption, the legal and financial rights of adoption, and that adoption is a life-long commitment.  Moreover, they were prepared to provide and care for the girls in all aspects of their lives.  The social worker concluded:  "[T.T. and her husband] have demonstrated that they are able and willing to meet [J.B.'s and A.B.'s] needs.  They have ensured that all special medical needs are met and worked tirelessly to obtain necessary services and support for [J.B. and A.B.], such as therapy and a wheel chair accessible van."

4

The social worker wrote in her report: "The sibling exception does not apply, as [J.B. and A.B.] are placed together and the caregivers wish to adopt both of them."

At the hearing, the parties did not present any witnesses. The only objection E.B. raised to the termination of his rights and adoption was that he loved his daughters and wanted an opportunity to foster a meaningful relationship with them.

The court terminated parental rights and concluded no exception to adoption applied, finding the children were both generally and specifically adoptable. It stated at the close of the hearing: "I really have to applaud the Agency in this case because these kids have bounced around quite a bit and one of them is very medically fragile. And they've been in a stable placement for over eight years now and seem to be flourishing. [¶] So the work has been very good and the children have been blessed with a family that appears to love them and whom they love, so that situation could not—does not appear it could be any better."

## DISCUSSION

E.B. contends insufficient evidence supports the juvenile court's finding that the girls are generally adoptable because at the time of the section 366.26 hearing, the social worker had just started the process of evaluating the home of T.T. and her husband for adoptive placement. E.B. specifically argues: "There was no information to even suggest that the home study had progressed to the point where the likelihood of their approval as adoptive parents could be projected with any significant degree of reliability." He adds that the social worker presented "cursory" information in the report regarding T.T. and her husband's understanding of their legal and financial rights and

5

responsibilities regarding adoption. While acknowledging the assessment report was unfinished because it excluded specific information regarding T.T.'s husband, including his criminal background check, the Agency contends the report substantially complied with statutory requirements.

I. *Applicable Law*

"At a section 366.26 hearing the court is charged with determining a permanent plan of care for the child. If a child is likely to be adopted, adoption is the plan preferred by the Legislature." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) "The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time." (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1060 (*Carl R.*).) "[W]hat is required is clear and convincing evidence of the likelihood that the [child] will be adopted within a reasonable time either by the prospective adoptive family or some other family." (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844.) "The question of adoptability posed at a section 366.26 hearing usually focuses on whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt that child. [Citation.] If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home. [Citation.] However, where the child is deemed adoptable based solely on the fact that a particular family is willing to adopt him or her, the trial court must determine whether there is a legal impediment to adoption." (*Carl R., supra,* at p. 1061.) "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters

6

relating to the child are not likely to dissuade individuals from adopting the minor.  In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*."  (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650.)  When a child is generally adoptable, "the suitability or availability of the caregiver to adopt is not a relevant inquiry."  (*In re R.C.* (2008) 169 Cal.App.4th 486, 493.)

Once the court determines that a child is likely to be adopted, the burden shifts to any party opposing adoption to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1).  (*In re C.F.* (2011) 193 Cal.App.4th 549, 553; *In re S.B.* (2008) 164 Cal.App.4th 289, 297.)

The "sibling relationship" exception codified in section 366.26, subdivision (c)(1)(B)(v) provides an exception to termination of parental rights when "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, [1] whether the child was raised with a sibling in the same home, [2] whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and [3] whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v); see *In re Valerie A.* (2007) 152 Cal.App.4th 987, 998.)

On appeal, we apply the substantial evidence standard of review when considering an appellant's challenge to a juvenile court's determination regarding the adoptability of a child under section 366.26. (*Carl R., supra,* 128 Cal.App.4th at p. 1061.)

II. *Analysis*

Based on our review of the record, we conclude substantial evidence supports the juvenile court's finding that J.B. and A.B. are likely to be adopted within the meaning of section 366.26. The social worker's report stated that one family in San Diego County with an approved adoptive home study was willing to adopt a child matching J.B.'s characteristics; two families with approved adoptive home studies were willing to adopt A.B., and one family was willing to adopt a sibling set matching the girls' characteristics. Construing the evidence and making all reasonable inferences to support the court's order, we conclude the court properly found the children generally adoptable and not just adoptable by T.T. and her husband.

Even had the court considered only the willingness of T.T. and her husband to adopt the girls, we nevertheless would conclude substantial evidence supports the court's finding they are likely to be adopted. The record does not show any legal impediment to their adoption of the girls. (*Carl R., supra,* 128 Cal.App.4th at p. 1061.) Although the Agency had not, by the time of the section 366.26 hearing, completed a preliminary assessment of the eligibility and commitment of T.T. and her husband as prospective adoptive parents, that deficiency did not deprive the court of sufficient evidence on which to make a determination that they likely would adopt the girls. The record shows T.T.'s home had been approved through the guardianship approval process.

T.T. and her husband understood the responsibilities of becoming adoptive parents, their legal and financial rights, and wanted to raise the girls to adulthood. The record also showed the children were flourishing in their home and that they had a great relationship with T.T. and her husband. Substantial evidence supports a finding that T.T. and her husband would be approved to adopt the girls, and therefore it is likely they would be adopted. Any deficiencies under section 366.21, subdivision (i)(1)(D) by the Agency's failure to timely prepare a preliminary assessment of their eligibility to the girls was harmless error. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 590-593.)

Finally, we note no law requires that an adoptive home study be completed before a court can terminate parental rights. The question before the juvenile court was whether the children were likely to be adopted within a reasonable time, not whether any particular adoptive parents were suitable. (See *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1651.) "[T]he question of a family's suitability to adopt is an issue which is reserved for the subsequent adoption proceeding." (*In re Scott M*. (1993) 13 Cal.App.4th 839, 844.) Accordingly, we conclude that the social worker's report, although lacking in some specifics, including regarding T.T.'s husband's criminal background check, substantially complied with the statutory requirements. (*In re John F.* (1994) 27 Cal.App.4th 1365, 1378.)[2]

---

[2]    E.B. contends that "[t]here is no evidence to suggest that these minors were counseled regarding the possibility that, under a finding of general adoptability, a legal circumstance would be created wherein they may have to leave the home of [T.T. and her husband] to be adopted by strangers or that they might be separated from each other." However, E.B. concedes this argument "becomes relevant only in the event that [T.T.]

DISPOSITION

The order is affirmed.

                                                              O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

---

and her husband become unable or unwilling to follow through with adoption or the Agency or court do not approve [them] as adoptive parents."  In light of the fact that T.T. and her husband remain committed to adopting both girls, this contention is speculative.