Filed 4/13/21  In re E.R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.R.<br><br>Defendant and Appellant. | D078154<br><br><br>(Super. Ct. No. NJ15444A-B) |

1

APPEAL from orders of the Superior Court of San Diego County, Michael Imhoff, Commissioner. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Senior Deputy County Counsel, for Plaintiff and Respondent.


Mi.R. (Father) appeals orders issued in the Welfare and Institutions Code section 300[1] dependency proceedings for his two minor sons, E.R. and M.R. (the boys), in which the juvenile court found the boys likely to be adopted and selected permanent plans of adoption for them pursuant to section 366.26. On appeal, Father contends there is insufficient evidence to support the court's findings, by clear and convincing evidence, that the boys were likely to be adopted. We disagree, and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Since February 2018 the boys had been residing with, and primarily cared for by, their maternal grandmother (Grandmother). In September 2018, police found the boys, then six and four years old, near train tracks and Father asleep on a bench at a train station. Father was under the influence of alcohol. In October, the boys' mother E.S. (Mother), was arrested for driving under the influence and possessing methamphetamine and drug

---

[1] All statutory references are to the Welfare and Institutions Code.

paraphernalia. She was later arrested for attempting to strike Grandmother, twisting her finger, and forcibly taking her wallet and cell phone. After the assault, Grandmother obtained a criminal protective order (CPO) against Mother. A month later, the San Diego County Health and Human Services Agency (Agency) filed section 300, subdivision (b), dependency petitions for E.R. and M.R., alleging that there was a substantial risk that they would suffer serious physical harm or illness due to their parents' substance abuse.

At the detention hearing, the court detained the boys in out-of-home care and ordered supervised visitation with their parents. Grandmother was present at the hearing and asked that the boys be placed with her. Her home was being assessed through the resource family approval (RFA) process.[2] She sought guardianship of the boys. The Agency had concerns about her practice of allowing Mother and Father to have unsupervised contact with the boys despite being concerned about their ability to safely care for them. Finding that the Agency made a prima facie showing on the petitions' allegations, the court ordered that the boys be detained in confidential foster care and gave the Agency discretion to detain them with Grandmother.

In its jurisdiction and disposition report, the Agency stated that the boys were doing well in their foster home, except for an incident where E.R. placed his hands around M.R.'s neck and did not let go until he was pulled off his brother. E.R. had no known health concerns, but the foster mother and a nurse practitioner raised questions about his developmental progress. M.R. was healthy, except for allergies, and had no known developmental concerns.

---

[2]    The RFA process is "a unified approval process to replace the multiple processes to approve foster care homes, relatives and nonrelative extended family members, and adoptive homes for the placement of dependent children." (*In re Charlotte C.* (2019) 33 Cal.App.5th 404, 408.)

Both Mother and Father failed to meet with the Agency. Father admitted that he drank two to three times per week and smoked marijuana to help him sleep. Neither parent met with a substance abuse specialist as requested. Mother also did not submit to requested drug testing. Neither parent requested visits with the boys. Grandmother spoke with the boys on the phone and visited them once, bringing them toys and interacting well with them. The Agency recommended that the court find the petitions' allegations true and declare the boys dependents of the court.

After the initial jurisdiction hearing was continued, the Agency submitted an addendum report stating that Mother had tested positive for methamphetamines and THC. She was in a voluntary inpatient treatment program. Mother admitted she had not spoken to Father in weeks and had a new boyfriend who was a support person for her. Father admitted drinking daily and that he had placed the boys in a dangerous situation at the train station. The boys' foster caregiver stated that they were behaving well and she had not received any complaints from their school. E.R. was reading above his grade level and scoring 100 percent on his math tests. At the December jurisdiction hearing, the court made true findings on the petitions' amended allegations and gave the Agency discretion to expand Grandmother's visits with the boys.[3]

In January 2019, a court-appointed special advocate (CASA) was designated for the boys. In an addendum report, the Agency stated that Father had attended a recovery program; tested positive for alcohol, methamphetamine, and THC; and had thereafter relapsed and lost his job.

---

[3] The petitions were amended to allege Mother had falsely imprisoned Grandmother rather than assaulted and robbed her.

Mother was on formal probation for the false imprisonment charge. She reported that she and Grandmother began clashing when she was in high school and began abusing drugs and alcohol. After graduation from high school, Mother's drug and alcohol use increased and Grandmother required her to leave the home. She met Father after her high school graduation and they both used methamphetamine and alcohol. Mother acknowledged that she needs to repair her feelings toward Grandmother. The Agency also reported that E.R. had a possible issue with his kidney functioning and was under a physician's care.

The January disposition hearing was continued as Mother was doing well in her residential recovery program and the Agency was in the process of reassessing its recommendations. In its subsequent addendum report, the Agency stated that Mother's counselor believed Mother was definitely not ready to assume physical custody of the boys. Father left his detox program because he did not like it and wanted to work. He tested negative for drugs and was interested in an outpatient treatment program.

E.R.'s teacher reported that E.R. was disruptive in class, made noise, bothered other students, and acted silly. A child and adolescent needs and strengths (CANS) assessment found that E.R. had anxiety and depression and was adjusting to trauma, which affected his functioning. Both boys were receiving therapy. Their therapist reported that after they visited with Mother, E.R. suffered stomachaches and headaches and M.R. exhibited behavioral issues, such as hitting and getting upset. She noted that the foster mother's calm approach to parenting worked well with the boys. During an incident at school, E.R. urinated in the bushes on the playground and told the teacher he really had to go.

At the February 2019 contested disposition hearing, the court declared the boys dependents of the court, placed them in foster care, ordered that reunification services be provided to Mother and Father, and set a six-month review hearing date.

The Agency's six-month review hearing report noted that Mother had relapsed, resulting in discharge from her treatment program. She tested positive for methamphetamine, was incarcerated for a probation violation, and entered another substance abuse treatment program after her release. While at that program, she violated the rules and was discharged early.

Mother's visits with the boys were inconsistent, and they exhibited negative behaviors after visits with her. Father was unemployed and homeless, and had relapsed into methamphetamine, alcohol, and marijuana abuse. Father's visits with the boys were canceled after excessive no-shows.

E.R. received a diagnosis of, and began treatment for, a kidney condition that requires lifelong medication and monitoring. He was receiving therapy for anxiety and aggression, which increased after visits with his parents. M.R. was also receiving therapy for anxiety and aggressive behaviors, including yelling, biting, and hitting. He had mild to moderate hearing loss caused by fluid in this ears and was awaiting surgery to relieve it. He also had allergic rhinitis, sleep disorder breathing, and abnormal weight loss.

The Agency social worker stated the boys were active, engaging, and developmentally on target. Although Grandmother had suspended completion of paperwork necessary for her RFA approval due to the death of a relative, the Agency had resumed the RFA process and was reassessing her for placement of the boys. The Agency recommended that the court continue

the boys' placement in foster care and extend their parents' reunification services for an additional six months.

At the August 2019 six-month review hearing, the court continued the boys as dependents and ordered an additional six months of reunification services for Mother and Father. In late August, M.R. underwent surgical procedures that returned his hearing to normal.

In late September, the Agency placed the boys with Grandmother. In a December report, the CASA stated that the boys were happy and doing well in Grandmother's care. Their behaviors had improved since being placed with her. When the CASA observed M.R. becoming close to losing control, Grandmother was able to calm him with a few words. The boys' therapist had reduced their sessions from weekly to biweekly.

In its January 2020 12-month review report, the Agency recommended that the court terminate reunification services for Father, but continue them for Mother. Father was homeless, had been sober for only three days before meeting with the Agency social worker, had been arrested on felony burglary and theft charges, and was not participating in services. Mother continued to reside in a residential treatment facility, had a part-time job, and had weekly visits with the boys that were supervised by Grandmother. However, Mother subsequently relapsed and ceased participating in any substance abuse treatment program. The Agency stated that Mother's and Grandmother's relationship had improved. Mother was participating in individual therapy and understood her methamphetamine use played a part in their past arguments.

In March addendum reports, the Agency changed its recommendations and asked the court to terminate reunification services for both parents.

Mother had moved in with her new boyfriend and accompanied him to visits with his children, which was in violation of the Agency's visitation policy. Mother had been terminated from the dependency drug court for unexcused absences and admitted to the Agency that she had an alcohol binge in January. In addition, Mother's therapist had terminated her therapy because of missed appointments. At the March 12-month review hearing, the court terminated Mother's and Father's reunification services and set a section 366.26 hearing to select permanent plans for the boys.

In its July 2020 section 366.26 report, the Agency recommended that the court terminate Mother's and Father's parental rights and select adoption as the boys' permanent plans. The Agency social worker opined that the boys were specifically adoptable because Grandmother expressed interest in adopting them. The boys had lived with her since September 2019. She provided them with daily care, safety, and permanence, and she showed an ability to meet their developmental, physical, mental, and emotional needs. They had formed an attachment to her, and she expressed her commitment to provide them with a long-term home. The boys looked to her for reassurance and comfort and stated they wished to stay in her care.

The Agency did not believe that the parents' relationships with the boys rose to the level of true parent-child relationships. After visits with their parents, the boys had no difficulty separating from their parents. Mother and Father continued to struggle with substance abuse.

In August, the court granted Grandmother's request for de facto parent status and she became the boys' educational rights holder. That same month, Mother filed two section 388 petitions seeking: (1) placement of the boys with her or, alternatively, resumption of reunification services; and (2)

8

unsupervised visits with the boys and a 60-day visit.[4] The Agency opposed Mother's petitions. In so doing, the Agency social worker stated that Grandmother had difficulty in the past maintaining consistent boundaries with Mother and recommended against allowing Grandmother to supervise Mother's visits with the boys. The social worker believed Grandmother would become nervous and easily swayed to make concessions when she felt pressured by Mother. Also, Grandmother did not want to supervise Mother's visits with the boys and believed increased visits with Mother would not be in their best interests. In an October addendum report, the Agency stated that the boys' therapist reported that their severe symptoms had subsided, although they had some regression after in-person visits resumed with their parents.

At the October hearing, the court heard Mother's section 388 petitions concurrently with the boys' section 366.26 permanency planning hearing. The court first conducted an evidentiary hearing on Mother's petitions and denied both. The court then conducted an evidentiary hearing on the section 366.26 issues at which it considered the Agency's section 366.26 report, related addenda, and other documentary evidence. It also heard testimony from Father, who stated he opposed the Agency's recommendation that his parental rights be terminated. Finding, by clear and convincing evidence, that it is likely the boys would be adopted within a reasonable period of time, the court terminated Mother's and Father's parental rights and selected adoption as their permanent plans.

## DISCUSSION

---

[4] Father also filed a section 388 petition, seeking resumption of reunification services, which the court summarily denied.

9

Father challenges the juvenile court's orders selecting adoption as the permanent plan for both boys.

*1. Adoptability under Section 366.26 Generally*

When there is no probability that a child will be reunified with a parent and reunification services have been terminated, the juvenile court must conduct a section 366.26 hearing and select a permanent plan for the child. (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) "The court has four choices at the [section 366.26] permanency planning hearing. In order of preference the choices are: (1) terminate parental rights and order that the child be placed for adoption . . . ; (2) identify adoption as the permanent placement goal and require efforts to locate an appropriate adoptive family; (3) appoint a legal guardian; or (4) order long-term foster care." (*Id.* at p. 53.) Adoption is the preferred permanent plan. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 997; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) The juvenile court does not consider other permanent plans unless and until adoption has been rejected. (§ 366.26, subd. (b)(1)-(7); *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164.)

At a section 366.26 hearing, the juvenile court, in selecting a permanent plan for a dependent child of the court, must determine whether Agency has shown, by clear and convincing evidence, that it is likely the child will be adopted. (§ 366.26, subd. (c)(1).) In making this finding, the court must consider the Agency's adoption assessment report and any other relevant evidence. (§ 366.26, subd. (c)(1).) "The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time." (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1060.) "[W]hat is required is clear and

convincing evidence of the likelihood that the [child] will be adopted within a reasonable time either by the prospective adoptive family or some other family."  (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844.)

Although the court need not find a child to be "generally" or "specifically" adoptable (*In re Mary C.* (2020) 48 Cal.App.5th 793, 802), evidence showing that a child is either specifically adoptable or generally adoptable may support a finding that the child is likely to be adopted within a reasonable time.  (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1313; *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1651.)  "The question of adoptability posed at a section 366.26 hearing usually focuses on whether the child's age, physical condition, and emotional state make it difficult to find a person willing to adopt that child.  [Citation.]  If the child is considered generally adoptable, we do not examine the suitability of the prospective adoptive home."  (*In re Carl R., supra,* 128 Cal.App.4th at p. 1061.)  "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor.  In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*."  (*In re Sarah M., supra*, at pp. 1649-1650.)  The presence or absence of a proposed adoptive family is only one factor to be considered by the court.  (*In re David H.* (1995) 33 Cal.App.4th 368, 378.)  If, however, a child is found adoptable based solely on a particular family's willingness to adopt (i.e., the child is specifically adoptable), the court must find whether there is any legal impediment to adoption and whether the prospective

11

adoptive parents can meet the child's needs. (*In re Carl R., supra*, at p. 1061; *In re J.W.* (2018) 26 Cal.App.5th 263, 268.)

On appeal from an order finding a child is likely to be adopted within the meaning of section 366.26, we apply the substantial evidence standard of review. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1232; *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223-224.) In determining whether there is substantial evidence to support a finding or order, "[w]e do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) The appellants challenging that finding bear the burden on appeal to show there is insufficient evidence to support the court's findings and orders. (*Ibid.*; *In re D.M.* (2012) 205 Cal.App.4th 283, 291.) In determining whether there is substantial evidence to support the court's finding by clear and convincing evidence, we determine whether the record as a whole contains "substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*In re Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

2. *Substantial Evidence Supports the Court's Adoptability Findings*

Father contends there is insufficient evidence to support the juvenile court's findings, by clear and convincing evidence, that the boys are likely to be adopted within a reasonable time. He argues E.R. has a serious kidney condition that requires medications and frequent medical care, that both boys have unresolved emotional issues and have exhibited negative behaviors,

12

especially after visits with Mother, and that Grandmother is unable to maintain boundaries with Mother and protect the boys and care for their needs on a permanent basis without the assistance of the Agency and juvenile court.

Based on our review of the record, we conclude there is substantial evidence to support the juvenile court's finding, by clear and convincing evidence, that both boys are likely to be adopted within a reasonable time. In particular, there is substantial evidence to support an implied finding by the court that the children are specifically adoptable. The Agency opined the boys are specifically adoptable and recommended that the court find the boys are adoptable. Grandmother had completed the RFA approval process and wanted to adopt the boys. She had cared for them on and off for most of their lives. The boys had lived with her for the 12-month period before the section 366.26 hearing and she provided them with daily care, safety, and permanence. They had also lived with her, and she had been their primary caretaker, from February 2018 until early November 2018, when they were detained in their dependency proceedings.

The Agency concluded that Grandmother had shown an ability to meet the boys' developmental, physical, mental, and emotional needs and it had no concerns regarding her ability to care for them. They had formed an attachment to her, looked to her for reassurance and comfort, and wished to stay in her care. In turn, she was committed to providing the boys with a long-term home. In December 2019, the boys' CASA reported that they were doing well in Grandmother's care. In July 2020, their CASA reported that the boys were "thriving" in her care and agreed with the Agency's recommendation for the court to terminate parental rights and select permanent plans of adoption for them.

As to Father's concerns with behavioral issues, the boys' therapist reported that many of their severe symptoms had subsided. The Agency stated that the boys' negative behaviors had improved, except after in-person visits with their parents. In January 2019, E.R. began therapy and subsequently learned coping skills to manage his anxiety and aggression. When he did not have contact with his parents, E.R. did not exhibit negative behaviors, such as chewing on his shirt collar. Furthermore, whereas before his placement with Grandmother E.R. would exhibit his anxiety by chewing on his shirt collar, after he was placed with Grandmother in September 2019, E.R.'s teacher did not notice that negative behavior.

The developmental concerns initially raised during the boys' dependencies appeared to be resolved by their primary physician's conclusion that they were at normal growth and development levels for their ages. Although E.R. has a serious kidney condition and requires lifelong medications, Grandmother had shown over the 12-month period prior to the section 366.26 hearing that she was able to monitor his condition and ensure his compliance with taking his medications. On that basis, the court could reasonably infer that Grandmother would be able to meet the boys' needs on a permanent basis even without the assistance of the Agency or the court. The possibility that a child may have future problems does not make that child unlikely to be adopted. (*In re Jennilee T., supra,* 3 Cal.App.4th at pp. 223-225.)

Here, Grandmother wished to adopt the boys despite any medical or behavioral issues they had or may have in the future. Also, she had received RFA approval and the record contains no evidence of any legal impediment to her adoption of the boys. Therefore, based on the evidence showing that Grandmother can meet the boys' needs and wished to adopt them, and that

14

there is no legal impediment to adoption, we conclude there is substantial evidence to support the court's finding, by clear and convincing evidence, that the boys are likely to be adopted in a reasonable time despite any medical, emotional, or behavioral problems that either of them had or may have in the future. (§ 366.26, subd. (c)(1); *In re Carl R.*, *supra*, 128 Cal.App.4th at pp. 1061-1062; *In re J.W.*, *supra*, 26 Cal.App.5th at p. 268; *In re David H.*, *supra*, 33 Cal.App.4th at p. 378 [existence of prospective adoptive parents is factor in determining whether child is adoptable]; cf. *In re Helen W.* (2007) 150 Cal.App.4th 71, 79 [children were likely to be adopted despite physical and developmental conditions].)

Contrary to Father's assertion, there was evidence showing that the strained relationship between Mother and Grandmother had improved and that Grandmother would be able to maintain adequate boundaries to protect the boys from Mother, if necessary. Although Grandmother previously declined to supervise Mother's visits with the boys, apparently because of her past difficulties with Mother, the court could reasonably infer that those past difficulties did not mean Grandmother could not adequately protect the boys in the future. Mother's difficulties with Grandmother were in large part due to Mother's drug use and bad choices; Mother was now getting along better with Grandmother after participating in individual therapy and learning how her methamphetamine use played a part in their past arguments. The court could reasonably infer that because of Grandmother's improved relationship with Mother and her prospective legal status as the boys' parent, she would be fully capable of protecting the boys if Mother were to take any action that might place them at risk emotionally or physically. In particular, after adoption Grandmother may, but need not, permit Mother to visit with the boys on such terms that ensure their safety and well-being.

15

Father has not carried his burden on appeal to show there is insufficient evidence to support the court's finding, by clear and convincing evidence, that the boys are likely to be adopted in a reasonable time.[5] To the extent he cites evidence or inferences that would have supported a contrary finding by the court, he misconstrues and/or misapplies the substantial evidence standard of review.

---

[5] In particular, unlike in *In re Valerie W.* (2008) 162 Cal.App.4th 1, cited by Father, the Agency's section 366.26 report included an assessment of the boys' medical, emotional, and behavioral needs, Grandmother's ability to meet those needs, and her eligibility and commitment to adopt the boys. (Cf. *In re Valerie W.*, at pp. 6, 13, 15.) Furthermore, because Father does not challenge the adequacy of the Agency's adoption assessment and solely argues there is insufficient evidence in the record to support the court's finding of adoptability, we need not, and do not, address the Agency's argument that Father forfeited or waived any challenge to that assessment by not objecting to it in the juvenile court.

DISPOSITION

The orders are affirmed.

DATO, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.

17